Filed 1/19/23  S.S. v. Superior Court CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| S. S., SR.,<br><br>　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LAKE COUNTY,<br><br>　　　Respondent;<br><br>LAKE COUNTY DEPARTMENT OF SOCIAL SERVICES, et al.,<br><br>　　　Real Parties in Interest. | A166417<br><br>(Lake County<br>Super. Ct. No. JV320646) |

S. S., Sr. (Father) seeks review by extraordinary writ of the juvenile court's disposition order, which bypassed reunification services and set a Welfare and Institutions Code section 366.26 hearing for his four-year-old son, S. S., Jr. (Son).[1]  Father contends substantial evidence does not support the court's finding, made pursuant to section 361.5, subdivision (b)(13), that he actively resisted court-ordered substance abuse treatment, and that the court abused its discretion in determining reunification services would not be in Son's best interest (§ 361.5,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

subd. (c)). We deny Father's petition and his request for a stay of the section 366.26 hearing.

## BACKGROUND

### A.

Section 361.5, subdivision (b)(13), provides in relevant part that a court "need not" provide reunification services when it finds, by clear and convincing evidence, that a parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention . . . . For purposes of this paragraph, '*resisted*' means the parent or guardian *refused to participate meaningfully* in a prior court-ordered drug or alcohol treatment program *and does not include 'passive resistance*,' as described in In re B.E. (2020) 46 Cal.App.5th 932." (§ 361.5, subd. (b)(13), italics added.)

### B.

In May 2022, the Lake County Department of Social Services (Department) filed a dependency petition, which alleged then three-year-old Son came within section 300, subdivision (b)(1), due to his parents' ongoing substance abuse, homelessness, neglect, and unsafe living conditions. At the time the dependency petition was filed, Son was living with a relative, Vivian H., who was no longer willing to care for him. This development left Son without a home or caregiver because the whereabouts of both parents were unknown. Accordingly, it was also alleged that Son had been left without any provision for support (§ 300, subd. (g)).

The detention report recounted that the family had first come to the Department's attention in 2017 when Son's older sister (L.D.S.) was removed from Father's and Mother's custody at birth—due to their ongoing substance abuse and unstable housing. Reunification and then family maintenance services

were provided until July of 2018, when the parents reunified with L.D.S. and the dependency case was dismissed.

The Department renewed its focus on L.D.S.'s (and now Son's) welfare in February of 2022. At that time, it was reported that Mother, Father, and both children lived in a trailer without power, water, or sewage connections. The parents had been observed driving while intoxicated with their children in the car (and not in car seats). They were also reported to be using methamphetamine and engaging in domestic violence in front of the children.

In the midst of the February 2022 child welfare investigation, the Robinson Rancheria Band of Pomo Indians (Robinson Rancheria)—with whom Son is registered as a member (through Mother)—intervened, placed the children with a maternal relative (Vivian H.), and designated Vivian the tribal custodian/guardian. At the time the children came into Vivian's care (immediately after leaving Mother's and Father's home), Son appeared to have not been bathed in weeks and had several untreated medical conditions—"extreme lice with scabs and open wounds," pink eye, decaying teeth, and an ear infection.

After several months of caring for the children and observing their sexualized behaviors with each other, Vivian determined she could continue to care for L.D.S. but not Son. The Robinson Rancheria's coordinator under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) then contacted the Department.

At the detention hearing, the juvenile court found that Son is an Indian child and that the Department had complied with the applicable due diligence and notice requirements. He was placed in foster care with a Native American family approved by the Robinson Rancheria.

## C.

The jurisdiction report indicated that the social worker had located Father (about a month after the dependency petition was filed) but also learned that Mother recently committed suicide.

When interviewed by the social worker, Father denied using methamphetamine but admitted being an alcoholic. He further stated that he "drinks a lot" and admitted being a primary caretaker for Son while they lived in an uninhabitable trailer. Father continued to occasionally stay at this trailer but also stayed with family and friends. He did not deny knowledge of Son's physical condition at the time he was placed with Vivian. Since the filing of the dependency petition involving Son, Father had not submitted to any substance abuse testing or made himself available to be assessed for other services.

The jurisdiction report also recounted Father's criminal history, which spanned 20 years and included numerous arrests (and at least one conviction) for driving under the influence (Veh. Code, § 23152, subds. (a), (b)), as well as two convictions for domestic violence (Pen. Code, § 273.5) in 2015 and 2019.

The juvenile court appointed counsel to represent Father, and then, after an uncontested jurisdictional hearing, sustained the petition's failure to protect (§ 300, subd. (b)(1)) allegations against Father. The allegation that Father's whereabouts were unknown was dismissed.

## D.

In its disposition report, the Department recommended bypass of reunification services pursuant to section 361.5, subdivision (b)(13).

In support of that recommendation, the social worker noted that Father's criminal and juvenile dependency history indicates long-term, chronic abuse of alcohol. Father was also previously

4

ordered, by the juvenile court (during L.D.S.'s dependency), into substance abuse treatment. While the juvenile court had jurisdiction over L.D.S., Father completed a six-month outpatient treatment program and was sober for 10 months. However, after the dependency case was dismissed (in July of 2018), Father quickly resumed drinking.

Further information regarding Father's resumption of substance abuse was provided by the Robinson Rancheria's ICWA coordinator, who submitted a declaration as the tribe's qualified expert witness. The tribe's ICWA coordinator opined that continuing Father's custody of Son would likely result in serious emotional or physical damage. In reaching that conclusion, the ICWA coordinator reported that Mother and Father resumed drinking almost immediately after L.D.S. was returned to their care. After Mother admitted as much to the Habematolel Pomos of Upperlake (where Father was enrolled and had housing), the tribal council recommended Mother and Father address their substance abuse in residential treatment while others cared for the children. Father initially agreed but then recanted after one month. As a result, he and the children were evicted from housing on the Habematolel Pomo reservation and disenrolled from the tribe.

**E.**

At the contested disposition hearing, the social worker testified that Father successfully completed court-ordered substance abuse treatment in 2018, but that he resisted that treatment by continuing to use alcohol after L.D.S.'s dependency case was dismissed. However, the social worker also acknowledged that between dismissal of the prior dependency case and May 2022 (when Son's petition was filed), no court had ordered Father to complete another substance abuse treatment program.

5

The ICWA coordinator for Robinson Rancheria also testified that Mother and Father were asked to leave that tribe's reservation not long after L.D.S.'s dependency was dismissed, due to complaints about their alcohol use, noise, and domestic violence. The ICWA coordinator further stated that Father was disenrolled from his own tribe for similar behavior. During that same time frame, the coordinator herself observed empty bottles of alcohol in and around Mother and Father's residences.

Father testified that he wanted the opportunity to engage in reunification services so that he could reunify with Son.

**F.**

Father's counsel (joined by Son's counsel) opposed the Department's recommendation to bypass reunification services. Father argued that the Department failed to meet its burden to show, by clear and convincing evidence, that Father *actively* resisted court-ordered substance abuse treatment within the requisite three-year period (see § 361.5, subd. (b)(13); *In re B.E.* (2020) 46 Cal.App.5th 932 (*B.E.*)). Father's counsel also argued that section 361.5, subdivision (b)(13) did not apply because there had been no court-ordered treatment within three years before the filing of Son's dependency petition.

The juvenile court found Father has a history of chronic alcohol use; that Father actively resisted alcohol treatment; and that reunification services were not in Son's best interest. The juvenile court observed, "[W]e're not talking about a slip-up. We're talking about chronic, everyday . . . situations that are open and notorious to the community."

The court adjudged Son a dependent, found that he was an Indian child, and that Father's continued custody was likely to result in serious emotional or physical damage. The court further found that active efforts were made to eliminate the need for removal but were unsuccessful, ordered Son removed from

6

Father's custody, bypassed reunification services, and set a section 366.26 hearing for February 14, 2023.

## DISCUSSION

### A.

Father argues that the juvenile court's finding that he actively resisted court-ordered substance abuse treatment is not supported by substantial evidence and is in conflict with *B.E.*, *supra*, 46 Cal.App.5th 932. We disagree.

### 1.

When a dependency petition is sustained and the children are detained, the juvenile court is generally required to order the provision of reunification services to the parent. (§ 361.5, subd. (a).) However, services may be bypassed under certain circumstances when reunification efforts are likely to be futile. (*In re I.A.* (2019) 40 Cal.App.5th 19, 23.) The same rule applies in ICWA cases. (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1283-1284, 1287-1288; *Letitia V. v. Superior Court* (2000) 81 Cal.App.4th 1009, 1016.)

Section 361.5, subdivision (b)(13), provides (in relevant part) that a court "need not" provide reunification services when it finds, by clear and convincing evidence, that a parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention."

*B.E.* held that, in using the term " 'resisted' ," the Legislature meant active resistance, not passive resistance. (*B.E., supra*, 46 Cal.App.5th at p. 941.) In doing so, the court extensively criticized a line of cases (including its own prior decision in *In re William B.* (2008) 163 Cal.App.4th 1220 (*William B.*)), which allowed for denial of reunification of services

7

after only passive resistance—in other words, one significant relapse—even if the parent had benefited from services in the past. (*B.E.,* at pp. 935, 939-941, 944.)

Because the Legislature intended the bypass provision to apply to "parents who refuse to participate meaningfully in a court-ordered drug treatment program, not parents who slip up on their road to recovery" (*B.E., supra,* 46 Cal.App.5th at pp. 934-935), *B.E.* held that juvenile courts should focus on whether a parent has actively demonstrated an unwillingness to change. (*Id.*, at p. 942.) The court reasoned that its interpretation of the "resisted" term was consistent with the statute's plain language, as well as the concept of futility (underlying the other bypass provisions): "It is decidedly *not* fruitless to offer services to a parent who genuinely made an effort to achieve sobriety but slipped up on the road to recovery. On the other hand, where a parent has recently actively resisted a court-ordered drug treatment program—i.e., *demonstrated an unwillingness to commit to sobriety*—it becomes more apparent that *trying the same approach so soon is unlikely to work.*" (*Id.* at pp. 941-942, some italics added.)

The Legislature amended the statute (effective January 1, 2022), to explicitly adopt the *B.E.* court's interpretation of "resisted." (See § 361.5, subd. (b)(13), as amended by Stats. 2021, ch. 585, § 2.5.) Accordingly, section 361.5, subdivision (b)(13), now also states: "For purposes of this paragraph, '*resisted*' means the parent or guardian *refused to participate meaningfully* in a prior court-ordered drug or alcohol treatment program *and does not include 'passive resistance,'* as described in [*B.E., supra,*] 46 Cal.App.5th 932." (§ 361.5, subd. (b)(13), italics added.)

We review the trial court's findings under section 361.5, subdivision (b), for substantial evidence. (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1164.) In reviewing a finding that a fact has been proved by clear and convincing evidence, the question on

appeal is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable the fact was true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1009.)

**2.**

Father concedes that he has the sort of extensive history of substance abuse that satisfies the first condition of section 361.5, subdivision (b)(13). And it is undisputed that we must adopt the *B.E.* court's definition of "resisted" now that the Legislature has explicitly integrated it into section 361.5, subdivision (b)(13). The only question is whether the Department presented substantial evidence from which a reasonable fact finder could have found it highly probable that Father, within the relevant three-year period, refused to participate meaningfully in a court-ordered substance abuse treatment program or demonstrated an unwillingness to commit to sobriety. (§ 361.5, subd. (b)(13); *B.E., supra*, 46 Cal.App.5th 932.)

Father contends that, after his successful completion of treatment in 2018, "[a]ny subsequent use of alcohol or breaks in [his] sobriety" should be considered a mere relapse under *B.E.* The Department contends that *B.E.* is distinguishable. The Department has the better argument.

In *B.E.*, the parents had their children removed on three separate occasions and successfully reunified in the first two dependency cases. At the time the children were detained for the third time, the parents had relapsed briefly but repeatedly, had been sober for periods of years while participating in the prior two cases' reunification services, and voluntarily enrolled themselves in residential drug treatment before child welfare services became involved. Before the disposition hearing, they both participated in all of the services recommended by the social worker. (*B.E., supra*, 46 Cal.App.5th at pp. 935-937, 945.) Under those circumstances, the court of appeal affirmed the juvenile

court's finding that the parents did not "resist" treatment, they simply relapsed. (*Id.* at p. 945.)

Here, in contrast, the evidence shows Father was sober for only 10 months during the prior dependency. More importantly, the juvenile court found that Father did more than relapse—he actively resisted substance abuse treatment (within the requisite three-year period). That finding is supported by the Department's evidence that Father and Mother resumed regularly drinking alcohol not long after the earlier dependency case was dismissed and continued to do so even after repeated interventions (including losing housing and the custody of their children) by their tribes.

Father's subsequent behavior (after the filing of Son's dependency petition) provides further support for the juvenile court's finding that he actively resisted treatment after dismissal of L.D.S.'s dependency case. Father admitted being an alcoholic but also told the social worker that "he likes to drink, [but] it has never been a problem." And, within two months of Son's detention, Father was arrested for driving under the influence, with a blood-alcohol level of 0.24 percent.

Father also made only minimal efforts to either visit Son or drug test after Son's detention. Although the Department offered Father significant pre-disposition services (including providing him with a phone, supervising twice weekly visitation, conducting twice weekly drug testing, and referring him to substance abuse treatment services at Lake County Tribal Health Consortium), Father had made only minimal efforts to engage. He only visited Son three times in the four months that had passed between Father's first contact with the social worker and the disposition hearing. He also only drug tested once; the test was positive for alcohol.

A reasonable fact finder could find it highly probable that Father's behavior (within the three-year period before Son's

dependency petition was filed) demonstrated an unwillingness to commit to sobriety. (See *B.E., supra*, 46 Cal.App.5th at pp. 942-943 [a parent who merely " 'go[es] through the motions' of treatment with the aim of achieving reunification and then immediately resum[es] a drug habit" is actively resisting treatment].) A reasonable fact finder might alternatively find that Father's behavior (within the relevant three-year period) constituted mere relapse. But it is not our role to reweigh conflicting evidence and substitute our judgment for that of the juvenile court if it is supported by substantial evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319.)

Father also suggests that section 361.5, subdivision (b)(13), has no application to him because he completed court-ordered treatment more than three years before the date Son's dependency petition was filed. Father is wrong.

The first prong of section 361.5, subdivision (b)(13)'s second condition does not require proof that the prior treatment occurred during the three-year period. It requires proof that the *resistance* to such treatment occurred within the three years preceding the filing of the current petition. (*Laura B. v. Superior Court* (1998) 68 Cal.App.4th 776, 780; accord, *William B., supra,* 163 Cal.App.4th at p. 1230.) The Legislature has superseded *Laura B.* and *William B.* to the extent they suggest mere relapse constitutes resistance to court-ordered substance abuse treatment. (See § 361.5, subd. (b)(13), as amended by Stats. 2021, ch. 585, § 2.5; *B.E., supra,* 46 Cal.App.5th at pp. 935, 939-941, 944.) However, we are not persuaded that there has been any change in the rule that the social services agency is only required to prove resistance (not court-ordered treatment) during the three-year period.

11

**B.**

Father also maintains that the juvenile court abused its discretion in finding reunification would not be in Son's best interests.  We disagree.

**1.**

The court "shall not" order reunification for a parent described by section 361.5, subdivision (b)(13), unless the court finds, by clear and convincing evidence, that reunification is in the child's best interest.  (§ 361.5, subd. (c)(2).)  The parent bears the burden to prove reunification services would be in the best interests of the child.  (*William B., supra,* 163 Cal.App.4th at p. 1227, superseded by statute on other grounds.)  Accordingly, there is a legislative presumption that offering services would be an " 'unwise use of governmental resources.' " (*Ibid.*)

The "best interest" concept is not rigidly defined.  It aims " ' "to maximize a child's opportunity to develop into a stable, well-adjusted adult." ' " (*William B., supra,* 163 Cal.App.4th at p. 1227.)  Relevant factors include the parent's history, his current efforts and fitness, the gravity of the problem that led to the dependency, the strength of the bonds between the child and his parent and current caretaker, and the child's need for stability and continuity.  (*In re G.L., supra,* 222 Cal.App.4th at p. 1164; *William B.,* at p. 1228.)  There must also be "some 'reasonable basis to conclude' that reunification is possible" before services are offered on a discretionary basis.  (*William B.,* at pp. 1228–1229.)

We review a juvenile court's best interests determination, under section 361.5, subdivision (c)(2), for abuse of discretion.  (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1140-1141.)

**2.**

Father contends the juvenile court abused its discretion because he successfully reunified with L.D.S. in the earlier dependency and because Father told a social worker, in advance of the disposition hearing, that he would do "whatever is necessary to get [Son] back."

Father admits that he is an alcoholic but continues to deny, despite all the obvious evidence to the contrary, that his alcoholism presents any problem with respect to his parenting. Furthermore, Father has largely failed to engage with the social worker, drug test, or visit Son in the months between detention and the disposition hearing. Father's continued denial and failure to take responsibility (despite already having completed substance abuse treatment) demonstrates that further reunification services have little chance of success.

Son is a young child, with strong needs for permanence and stability. Given the record of Father's limited visitation with Son, their bond does not appear to be especially strong. On this record, Father fails to demonstrate that the juvenile court abused its discretion.

**C.**

Father also challenges the juvenile court's consideration of the qualified expert witness declaration submitted by the ICWA coordinator, contending it was inadmissible. We need not consider his argument because he forfeited it—by failing to raise an objection to the declaration below. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"], superseded by statute on another ground as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)

13

Although Father unsuccessfully objected to a portion of the ICWA coordinator's live testimony at the disposition hearing (on foundation and hearsay grounds), he did not preserve any objection to the court's consideration of her expert witness declaration. In fact, the record shows that Father stipulated that the ICWA coordinator met the requisite expert witness qualifications and that the juvenile court could accept her declaration in lieu of her testimony.

## DISPOSITION

Father's writ petition is denied on the merits. His request for a stay is also denied. Because the section 366.26 hearing is set for February 14, 2023, our decision is final as to this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____
BURNS, J.

We concur:

_____
JACKSON, P.J.

_____
SIMONS, J.

A166417